PUTNAM *v.* PHŒNIX PREFERRED ACCIDENT
INSURANCE CO.

1. ACCIDENT INSURANCE—ACTION ON POLICY—CAUSE OF ACCIDENT
—EVIDENCE—SUFFICIENCY.

In an action on an accident policy for the death of assured by
being thrown from a horse, the defense being that assured
came to his death by voluntarily exposing himself to obvious
risk and danger, by undertaking to ride a horse known to be
vicious and unruly, evidence examined, and *held,* that de-
fendant was not entitled, under the undisputed evidence, to
a directed verdict, and that it was proper to submit the case
to the jury.[1]

2. APPEAL AND ERROR—NEW TRIAL—EXCEPTIONS.

An assignment of error that the cause was submitted to the
jury upon an improper theory will not be considered on ap-
peal where no exceptions were taken to the charge as given.

3. SAME—EVIDENCE—OBJECTION.

Where an answer to a question propounded by defendant's
counsel was stricken out as not being responsive, and the
court indicated that the witness could testify as to her knowl-
edge of the facts, and counsel did not follow such suggestion,
he is precluded from questioning the ruling of the court.

4. EVIDENCE—ANIMALS—CHARACTER.

Evidence of a witness who had owned and sold a horse as to its
value was properly received as bearing upon its reputation
and quality, where the defense sought to establish that the
horse was vicious and unmanageable.

5. SAME.

Evidence of witnesses who had known the horse before and
after the accident was properly received as against the objec-
tion that it had no tendency to prove its disposition on the
day of the accident.

Error to Cass; Des Voignes, J. Submitted October 12,
1908. (Docket No. 21.) Decided December 21, 1908.

[1]As to what constitutes voluntary exposure to unnecessary dan-
ger, see note to *Fidelity & C. Co.* v. *Chambers* (Va.), 40 L. R. A. 432.

Assumpsit by Ellen Putnam against the Phœnix Preferred Accident Insurance Company on a policy of insurance. There was judgment for plaintiff, and defendant brings error. Affirmed.

*Abbott & Abbott,* for appellant.

*Charles E. Sweet,* for appellee.

McALVAY, J.   Plaintiff, who was named as beneficiary in a certain accident insurance policy issued to her son by defendant company, recovered a judgment of $413.28 in a suit brought on such policy; that being the amount to which she, under said policy, claimed she was entitled to recover on account of the death of her son, the insured.   His death resulted from injuries received in an accident which occurred September 22, 1906.   That he was killed on that date by being thrown from a horse in some manner is not disputed.   The defense was that this young man came to his death by voluntarily exposing himself, contrary to the provisions of the insurance contract, to obvious risk of injury and obvious danger, by mounting and undertaking to ride a running mare known to him to be vicious, unruly, and unsafe to ride, and under the policy defendant made tender of 10 per cent. of the amount of the insurance as payment in full.   The deceased was by occupation a cook and conducted a restaurant.   Defendant at the close of plaintiff's case, and also when all the testimony had been taken, moved for an instructed verdict in its favor, for the reason that it appeared from the uncontradicted evidence that the death of the insured was caused by his gross negligence in exposing himself "to obvious risk of injury and obvious danger." These motions were both denied, and the case given to the jury under the charge of the court.   A verdict was rendered in favor of plaintiff.   Defendant then moved in arrest of judgment, which was denied.   A motion was then made for a new trial, for the reasons:   (*a*) That there was no evidence to support the verdict; (*b*) that the ver-

dict was contrary to the weight of evidence; and (c) that the verdict was inconsistent with the special findings of the jury. The motion for a new trial was denied; the reasons given therefor negativing all the grounds relied upon.

To all these rulings of the court, and also to certain ruling on the evidence, exceptions were taken, upon which errors are assigned. No error is assigned to any specific portion of the charge of the court. The facts necessary to state in order to understand the defense relied upon (in addition to what will appear in the special findings of the jury requested by defendant) are as follows: The brother of deceased had in charge several running horses, among them the one in question, and on the day of the accident deceased proceeded to ride this mare from Cassopolis to Dowagiac, a distance of 12 miles. During this ride it is claimed by defendant that she twice ran away with deceased, and that his death was caused by his voluntary act in mounting her after the second runaway and riding her into Dowagiac, exposing himself "to obvious risk of injury and obvious danger." The court ruled, in effect, that what occurred during this ride was a question of fact to be submitted to the jury, together with the question of the general character and temperament of the mare and the knowledge of deceased relative to the same. The following are special requests of defendant above referred to and the findings of the jury thereon:

"*First.* Was Charles Putnam intentionally forcing and driving his horse at a reckless and dangerous rate of speed at the time when it was claimed he was thrown from said horse and killed?
"*A.* No.
"*Second.* Was Charles Putnam killed as a result of the dangerous, vicious, unmanageable disposition, conduct, and actions of the horse, upon which it is claimed he was riding and from which it is claimed he was thrown?
"*A.* No.
"*Third.* On the 22d of September, 1906, did the horse from which it is claimed that Charles Putnam was thrown

and killed become dangerously spirited, unruly, and unmanageable in the vicinity of Well's farm and while the said Charles Putnam was riding him?

"*A.* No.

"*Fourth.* On the 22d day of September, 1906, did the horse from which it is claimed Charles Putnam was thrown and killed make one or more attempts to run away with said Charles Putnam before said Charles Putnam approached near Dowagiac with said horse?

"*A.* No.

"*Fifth.* Before mounting and riding the horse into the village of Dowagiac, where and from which it is claimed that the said Charles Putnam was thrown and killed, did the said Charles Putnam know from previous experience while riding the said horse on the same day that the said horse was acting viciously and unruly, and that the said horse was hard to manage and control, and that the said horse was inclined to run at a dangerous rate of speed while being ridden?

"*A.* No."

We will consider the questions before us in the order presented in defendant's brief.

1. It is claimed that a verdict should have been directed for defendant. Under this claim it has been necessary to examine all of the evidence in the case. From such examination we are satisfied that the claim of defendant that the evidence was undisputed that the deceased " voluntarily exposed himself to obvious risk of injury and obvious danger " was not sustained. There was evidence in the case that this mare was always kind and easy to handle, that she was an even-tempered horse, that she had been ridden along the road and went along quietly, and that the deceased had seen her in races three times. The record of the occurrences during the ride which ended fatally is not conclusive that the horse was running away or was at any time beyond control of deceased. All these were questions of fact for the jury. The court would not have been justified in directing a verdict. Neither the court below, nor this court, except in cases where honest minds cannot differ, will pass upon the weight of evidence in any case.

2. Defendant urges that the court erred in denying the motion for a new trial. In connection with this proposition, it is for the first time claimed that the case was submitted to the jury upon an erroneous theory. Error is not assigned to any specific parts of the charge. The question is therefore not properly before us. The reasons urged in the motion for a new trial are given above. This contention has in fact been disposed of by us in holding that there were questions of fact to be submitted to the jury.

3. Error is assigned because the court excluded and struck out the answer of a witness for defendant to the following question:

"What have you to say as to the speed of the horse?
"*A.* Well, I should consider the horse was running away."

This was objected to as not responsive. The court indicated that the witness might testify to her knowledge of the fact. Counsel for defendant then asked if the answer was stricken out, and the court said:

"I think it may be, the answer as it stands."

Counsel did not pursue the subject further, but chose to abandon it. He should not have done so if he cared for the testimony. The court's ruling plainly invited further examination.

4. The remaining assignments of error discussed relate to admitting and allowing testimony to stand against defendant's objection. The first two instances relate to testimony of a witness who owned and sold the horse, who stated that the mare was valued at $250. It was claimed by plaintiff that this testimony was material as bearing upon the reputation and quality of the mare. The testimony was material in view of the claim of the defense as to the character of the horse. The remaining three assignments of error relate to testimony of witnesses who knew this horse and testified as to her disposition, temperament, and gentleness, both before and after the accident. The objection was made that this had no tendency to show

what her disposition was on the day of the accident.   The court properly overruled the objection.   The testimony was material and relevant.

We discover no errors in the case.   The judgment of the circuit court is affirmed.

GRANT, C. J., and HOOKER and MOORE, JJ., concurred.   BLAIR, J., concurred in the result.